# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

LACY PARKS,

       Plaintiff,

v.              CIVIL ACTION NO. 5:18-cv-00326

ROUNDPOINT MORTGAGE SERVICING
CORPORATION and JOHN DOE HOLDER,

       Defendants.

# MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Plaintiff's Motion for Partial Summary Judgment on Liability for Eleven (11) Violations of the West Virginia Consumer Credit and Protection Act* (Document 20), the *Plaintiff's Memorandum in Support of His Motion for Partial Summary Judgment on Liability for Eleven (11) Violations of the West Virginia Consumer Credit and Protection Act* (Document 21), *RoundPoint Mortgage Servicing Corporation's Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment* (Document 23), and the *Plaintiff's Reply Memorandum in Support of His Motion for Partial Summary Judgment on Liability* (Document 28).

The Court has also reviewed *RoundPoint Mortgage Servicing Corporation's Motion for Summary Judgment* (Document 24), *RoundPoint Mortgage Servicing Corporation's Memorandum of Law in Support of Its Motion for Summary Judgment* (Document 25), the *Plaintiff's Response in Opposition to Defendant RoundPoint's Motion for Summary Judgment*

(Document 29), and *RoundPoint Mortgage Servicing Corporation's Reply Memorandum of Law in Further Support of its Motion for Summary Judgment* (Document 32).

Finally, the Court has reviewed the *Defendant's Consent Motion to Extend Deadline to Respond to Plaintiff's Partial Motion for Summary Judgment* (Document 22), the *Plaintiff's Consent Motion to Extend Deadline to Respond to Defendant's Partial Motion for Summary Judgment* (Document 26), the separately filed proposed order (Document 27), and the *Defendant's Consent Motion to Extend Deadline to File a Reply Brief in Response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment* (Document 31). In addition, the Court has reviewed all exhibits and attachments. For the reasons stated herein, the Court finds that the Plaintiff's motion for partial summary judgment should be granted and the Defendant's motion for summary judgment should be granted in part and denied in part.

**FACTS**

The Plaintiff, Lacy Parks, initiated this suit with a *Complaint* (Document 1-1) filed in the Circuit Court of Raleigh County, West Virginia, on January 18, 2018. The five-count complaint alleges illegal debt collection, failure to identify holder, failure to provide statement of account, illegal refusal of payments, and breach of contract. The Plaintiff named RoundPoint Mortgage Servicing Corporation and John Doe Holder (hereinafter "RoundPoint") as the defendants. The complaint alleges that RoundPoint is attempting to foreclose on Mr. Parks' home while refusing to accept his payments and denying Mr. Parks a loan modification. It further alleges that RoundPoint refused to provide Mr. Parks with copies of his loan file or contact Mr. Parks' attorney, even though RoundPoint knew he was represented by counsel. On February 18, 2018, RoundPoint filed a *Notice of Removal* (Document 1), citing complete diversity among the parties and federal question jurisdiction, because "RESPA, Regulation Z, and regulations concerning VA

loans arise under federal statutory law (although not pleaded as an independent count or counts)." (Notice of Removal at ¶ 15).

Mr. Parks served 26 years in the West Virginia National Guard, and served one year of active duty in Iraq, before being awarded United States Veteran's Administration Disability Benefits ("VA Benefits") in 2012 due to respiratory and PTSD issues. On July 21, 2015, Primelending, a Plaincapital Corporation, issued a mortgage loan to Mr. Parks in the original principal amount of $125,000 (the "Loan"). The Loan is evidenced by a promissory note, and the promissory note is secured by a Deed of Trust, both dated July 21, 2015. The Deed of Trust encumbers the real property commonly known as 306 Crescent Road, Beckley, West Virginia 25801 (the "Property"). On August 25, 2015, the Loan was sold to RoundPoint. On September 1, 2015, RoundPoint began servicing the Loan and is the current servicer of the Loan.

When Mr. Parks obtained the Loan, his monthly income consisted of money from VA Benefits and $600 a month from an apartment he rented through the HUD-VASH program.[1] In October 2016, the tenant's lease ended, and Mr. Parks did not re-rent the apartment, resulting in a decrease of $600 a month in his income.[2] On December 1, 2016, Mr. Parks defaulted on the Loan by failing to make the monthly payment due on that date and has not made any payments since November 30, 2016.[3] On January 30, 2017, RoundPoint sent a Notice of Default and Right to Cure to Mr. Parks.

---

1 "The HUD-Veterans Affairs Supportive Housing (HUD-VASH) program combines Housing Choice Voucher (HCV) rental assistance for homeless Veterans with case management and clinical services provided by the Department of Veterans Affairs (VA)." *HUD-VASH Vouchers*, HUD.gov https://www.hud.gov/program_offices/public_indian_housing/programs/hcv/vash. Mr. Parks testified during his deposition that he needed to make repairs to the apartment before he could rent the apartment again through the program.
2 Mr. Parks testified that when he applied for the Loan he was receiving income from the apartment. *See* (Parks Dep. 11:13-16) (Document 24-2.).
3 It is unclear if Mr. Parks has resumed payments. This information is based on Mr. Parks' testimony during the deposition conducted on December 20, 2018. (Parks Dep. 13:2-8) (Document 24-2.).

In April 2017, Mr. Parks contacted RoundPoint to inquire about loss mitigation options and getting the loan re-instated. On April 27, 2017, he submitted an incomplete loss mitigation application, and RoundPoint sent him a notice of deficiencies and requested supplemental information. On May 18, September 7, and September 27, of 2017, Mr. Parks submitted incomplete applications and RoundPoint sent him a notice of deficiencies and requested supplemental information. On October 16, 2017, Mr. Parks submitted a completed application. On November 1, 2017, RoundPoint sent Mr. Parks a notice of denial due to his income. After sending the notice of denial, RoundPoint directed its attorneys to schedule a foreclosure sale for January 2018.

Mr. Parks sent a request for information to RoundPoint, dated November 20, 2018.[4] In it, Mr. Parks expressed concern that RoundPoint breached the contract with him and requested a complete copy of the loan servicing file. In the letter, he also alleged that RoundPoint refused to accept his payments and failed to follow loss mitigation guidelines with respect to the Loan. He further stated that if RoundPoint or its attorneys did not respond to the letter within forty-five days, he would assume they did not want to discuss a resolution. Finally, Mr. Parks requested that RoundPoint direct its response to the letter to his attorney. RoundPoint responded to the letter on January 16, 2018. In December 2017 and January 2018, RoundPoint made telephone calls to Mr. Parks.[5]

After this case was filed, RoundPoint cancelled the foreclosure sale. Mr. Parks applied for a loan modification in May 2018, but the application was incomplete and RoundPoint sent Mr.

---

4 There is a dispute about when RoundPoint received the letter, which the Court will address, *infra*. Also, Mr. Parks sent the letter to RoundPoint's registered agent, Corporation Services Co.
5 The business records (Document 20-3) from RoundPoint use the notation "OB" which the Court construes as shorthand for an outbound call.

Parks a notice of deficiencies and requested supplemental information. RoundPoint received the complete loan modification application in early July 2018 and began processing it on July 9, 2018. The application was denied due to Mr. Parks' income. Mr. Parks indicated his income had changed and filed additional financial information in November 2018 to qualify for a loan modification. On January 10, 2019, RoundPoint determined that the application was incomplete and sent Mr. Parks a notice of deficiency. As of January 10, 2019, RoundPoint was waiting for Mr. Parks to submit additional documents so it could process the latest attempt to modify the loan.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light

most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd,* 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the non-moving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)

(internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

**DISCUSSION**[6]

There are cross motions for summary judgment as to Count I, for illegal debt collection. Mr. Parks moves for partial summary judgment as to Count I and argues that RoundPoint violated the West Virginia Consumer Credit and Protection Act (WVCCPA) by directly communicating with him after it knew he was represented by counsel, and by threatening to collect attorney's fees and cost when such fees are not authorized by the Deed of Trust. RoundPoint moves for summary judgment on all counts of Mr. Parks' complaint.

*Count I - Illegal Debt Collection*

The WVCCPA prohibits debt collectors from making "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code § 46A–2–127. The WVCCPA further provides that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § § 46A–2–128.

> The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. As suggested by the court in *State v. Custom Pools*, 556 A.2d 72, 74 (Vt. 1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose." Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.

---

6 In *Plaintiff's Response in Opposition to Defendant RoundPoint's Motion for Summary Judgment* (Document 29), Mr. Parks agrees to voluntarily dismiss Count IV regarding the illegal refusal to accept payment. Therefore, the Court will not discuss Count IV.

*State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 S.E.2d 516, 523 (W. Va. 1995) (citations omitted). Mr. Parks' claims alleging illegal debt collection are predicated on two events: the phone calls by RoundPoint after it was notified he had counsel, and the letter sent by RoundPoint which states that Mr. Parks' balance may include attorney's fees.

Initially, Mr. Parks seeks summary judgment because RoundPoint violated W. Va. Code § 46A-2-128(e) since it was notified via a request for information that Mr. Parks was represented by counsel. W. Va. Code § 46A-2-128(e) prohibits:

> Any communication with a consumer made more than three business days after the debt collector receives written notice from the consumer or his or her attorney that the consumer is represented by an attorney specifically with regard to the subject debt. To be effective under this subsection, such notice must clearly state the attorney's name, address and telephone number and be sent by certified mail, return receipt requested, to the debt collector's registered agent, identified by the debt collector at the office of the West Virginia Secretary of State or, if not registered with the West Virginia Secretary of State, then to the debt collector's principal place of business. Communication with a consumer is not prohibited under this subsection if the attorney fails to answer correspondence, return phone calls or discuss the obligation in question, or if the attorney consents to direct communication with the consumer. Regular account statements provided to the consumer and notices required to be provided to the consumer pursuant to applicable law shall not constitute prohibited communications under this section[.]

Mr. Parks' letter dated November 20, 2017 states, "[p]lease direct your response and all further communication or correspondence about my account directly to the attorney who represents me on this . . ." Letter from Mr. Parks to RoundPoint (November 20, 2017) (Document 20-1). The letter contains Mr. Parks' attorney's name, address, and telephone number. *Id.* Mr. Parks sent the letter by certified mail, return receipt requested, to RoundPoint and its registered agent.

The litigants dispute when RoundPoint received Mr. Parks' letter. Mr. Parks contends that RoundPoint received the letter on November 29, 2017, and submits to the Court the return receipt, dated November 29, 2017. The return receipt for the letter sent to RoundPoint's registered agent was unsigned. RoundPoint counters that the letter was received on December 5, 2017, based on its business records. (RoundPoint's business records) (Document 20-3). However, the exact same business records indicate that RoundPoint made outbound calls to Mr. Parks on December 13, 2017, and as late as January 25, 2018. *Id*. RoundPoint's business records further reveal that on December 5, 2017, RoundPoint had received the letter and knew that they were to address Mr. Parks' attorney.[7] Therefore, even though there is a dispute of fact as to when the letter was received, based on RoundPoint's business records, it is clear to the Court that RoundPoint did, in fact, at least *attempt* to continue contacting Mr. Parks directly after it was advised that he was represented by counsel in this matter.

RoundPoint argues that even if it did, in fact, contact Mr. Parks, he did not answer. Therefore, there was no communication pursuant to W. Va. Code § 46A-2-128(e). This Court has previously addressed this issue in *Stover v. Fingerhut Direct Mktg., Inc.,* 2010 WL 1050426 (S.D.W. Va. Mar. 17, 2010). In *Stover*, similar to this case, the defendant argued that unanswered phone calls to the residence of the Plaintiff did not constitute a communication within the meaning of the statute. *Id*. at 3. This Court found the opposite to be true. In doing so, the Court noted that the Supreme Court of Appeals of West Virginia has indicated that the WVCCPA is to be construed broadly, because "[t]he purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would

---

[7] The business records also reveal that on January 24, 2018, RoundPoint acknowledged that Mr. Parks was represented by counsel.

otherwise have difficulty proving their case under a more traditional cause of action." *Id*. at 2 (*quoting State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.* 461 S.E.2d at 523). The Court held that unanswered telephone calls constitute communication, as such calls can express information to the intended recipient that the debt collector wants to speak with the debtor and wants the debtor to pay a debt. *Id*. at 4. Also, similar to the Defendant in *Stover*, RoundPoint argues that the Court should look to W. Va. Code § 46A-2-125 for guidance on how to define communication in the context of the WVCCPA.[8] The Court again finds this reading of the statute incorrect because Section 46A-2-125 is targeted at behavior intended to annoy, abuse, oppress or threaten, and has a *mens rea* requirement, while Section 46A-2-128(e) prohibits communication *whenever* it appears that the debtor is represented by an attorney. Therefore, the Court finds that RoundPoint's unanswered phone calls constituted communications pursuant to Section 46A-2-128(e), and based on the evidence presented, no reasonable juror could conclude that RoundPoint did not contact Mr. Parks numerous times after it was aware he was represented by counsel.

Next, Mr. Parks moves the Court to grant summary judgment as to Count I because RoundPoint, acting as a debt collector, illegally represented to Mr. Parks that it was entitled to collect attorney's fees. In support of this motion, Mr. Parks submits as evidence a letter from RoundPoint. The letter from RoundPoint to Mr. Parks (Document 20-4), states: "the corporate

---

8 W. Va. Code § 46A-2-125 provides in pertinent part:

No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section . . . Calling any person more than thirty times per week or engaging any person in telephone conversation more than ten times per week, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number. In determining whether a debt collector's conduct violates this section, the debt collector's conduct will be evaluated from the standpoint of a reasonable person. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after eight o'clock antemeridian and before nine o'clock postmeridian, local time at the consumer's location.

advance balance above may include, but is not limited to, property inspection fees, **attorney's fees and costs,** and other default-related fees and costs, if applicable." *Id*. (emphasis added). The letter further states:

> Federal law requires us to advise you that RoundPoint Mortgage Servicing Corporation (NMLD ID# 18188) is a debt collector and that this is an attempt to collect a debt. Any information obtained may be used for that purpose. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy proceeding, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect indebtedness as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.

*Id*. RoundPoint disputes this characterization of the letter and argues that it was an "informational statement" that was legal under Sections 46A-2-127(g) and 46A-2-128(d). This argument is specious.

The WVCCPA prohibits debt collectors from making "[a]ny representation that an existing obligation of the consumer may be increased by the addition of attorney's fees, investigation fees, service fees or any other fees or charges when in fact such fees or charges may not legally be added to the existing obligation." W. Va. Code § 46A–2–127(g). Additionally, the WVCCPA prohibits the use of unfair or unconscionable means to collect or attempt to collect a debt, including the addition of "interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating or modifying the obligation and by statute or regulation[.]" W. Va. Code § 46A–2–128(d).

RoundPoint does not dispute that it is a debt collector, attempting to collect a debt. Also, the Fourth Circuit has held that foreclosure proceeding are attempts to collect debt. *See McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 359–60 (4th Cir. 2016). To the extent that the

letter is informational, the letter also informs Mr. Parks that it was an attempt to collect a debt, which may include attorney's fees. The Deed of Trust is clear in stating that, in the event of a foreclosure proceeding, the Borrower, Mr. Parks, is not responsible for legal fees. (Deed of Trust ¶ 25) (Document 20-5) Therefore, the Court finds that no reasonable juror could find that RoundPoint did not claim that it "may" collect attorney's fees despite the Deed of Trust expressly stating they are not permitted. Accordingly, the Plaintiff's motion for summary judgment as to Count I should be granted.

***Count II - Failure to Identify Holder and Count III Failure to Provide Statement of Account***

Count II and III of Mr. Parks' complaint alleges that RoundPoint violated W. Va. Code § 46A-2-127(c), because it did not identify itself as the holder of the Loan, W. Va. Code § 46A-2-114(2), because RoundPoint did not provide Mr. Parks with his account history, and W. Va. Code § 46A-2-115(d), because it did not provide a statement of default charges to Mr. Parks. Both Counts are based on Mr. Parks' letter and RoundPoint's response. RoundPoint moves for summary judgment as to Count II and III, because it did, in fact, respond to Mr. Parks letter and provide him with the information requested which included, *inter alia*, identifying the holder of the Loan and statements of his account. In support of its position, RoundPoint references Mr. Parks' deposition where he admits that RoundPoint's response to the letter included a statement of his account, pay history, and identified the holder of the Loan. (Parks Dep. 33:6-37:6) (Document 24-2.). Mr. Parks argues that RoundPoint is not entitled to summary judgment on these counts, because there is a material question of fact as to whether RoundPoint's response, which was mailed forty-eight (48) days[9] after Mr. Parks sent his letter, complied with the

---

9 The Court relied on the USPS certified mail return receipt (Document 22-1) signed on November 29, 2017, and the Fed-Ex mailing label dated January 16, 2018 (Document 29-11).

WVCCPA.[10]  Counts II and III of the complaint are based on several specific code provisions in the WVCCPA, but none of the statutes under which Mr. Parks seeks to impose liability against RoundPoint contain an express time limit to respond to the request. Although the Court is troubled that these statutes require that creditors respond to debtors with vital information with no statutory deadline, summary judgment is appropriate as to Count II and III. While there is a dispute of fact as to when RoundPoint responded, it is not material since the law imposes no time limit where liability would attach. RoundPoint complied with Mr. Parks' request by identifying itself as the holder of the Loan and providing the information he requested about the Loan.

*Count V - Breach of Contract*

Finally, RoundPoint moves for summary judgment as to Count V and argues that it did not breach its contract with Mr. Parks when it failed to provide him with a loan modification, nor did it discourage him from making payments on the Loan. To support its motion, RoundPoint cites Mr. Parks' deposition testimony as well as his Responses to Request to Admit, Mr. Todd's Affidavit, and the Deed of Trust. RoundPoint also argues that no dispute of material fact exists because RoundPoint is not legally obligated to modify the Loan.

Mr. Parks responds that there is a material dispute of fact about whether RoundPoint followed the proper procedures during the loan modification process and the foreclosure proceedings. Specifically, Mr. Parks argues that the VA has promulgated regulations to limit foreclosures of loans it has guaranteed, and that RoundPoint did not comply with those regulations.

---

10 In the *Plaintiff's Response in Opposition to Defendant RoundPoint's Motion for Summary Judgment* (Document 29), Mr. Parks argues in footnote 4 that RoundPoint is in violation of 12 C.F.R. § 1024.35 (d), which requires that an acknowledgement of receipt must be mailed within five days of a servicer receiving a note of error from a borrower, and 12 C.F.R. § 1024.35 (e)(3)(i)(C), which requires a response to the asserted errors no later than 30 days after the servicer receives the applicable notice of error. Mr. Parks' letter was not a letter asserting an error, rather it was a letter asserting that he believed there was a breach of contract, and a request for information to confirm the alleged breach.

Mr. Parks submits as evidence the VA Guaranteed Loan and Assumption Policy Rider, which states in part: "[i]f the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender." *VA Guar. Loan and Assumption Policy Rider*, at 2. Specifically, Mr. Parks cites 38 C.F.R. § 36.4350(f), (g), and (h), which he argues requires RoundPoint to send Mr. Parks a letter outlining his loss mitigation options after he fell behind on his payments and, under certain circumstances, have a face-to-face meeting with the borrower. Mr. Parks further notes that 38 C.F.R. § 36.4315 permits the modification of a loan if it is in the best interest of the veteran and the Government and affords RoundPoint the discretion to lower Mr. Parks payments through loan modification, and that 38 C.F.R. § 36.4329 even provides cash incentive for servicers to offer borrowers certain loss mitigation options.

Count V of the complaint is styled as a breach of contract claim when it is actually a claim for the breach of an implied covenant of good faith and fair dealing.[11] "To survive summary judgment on a breach of contract claim, the plaintiff must provide concrete evidence on the following elements: (1) the existence of a valid, enforceable contract; (2) the plaintiff's performance under the contract; (3) the defendant's breach of its duties or obligations under the contract; and (4) resulting injury to the plaintiff." *McNeely v. Wells Fargo Bank, N.A.*, 115 F. Supp. 3d 779, 789 (S.D. W. Va. 2015) (Goodwin, J.) (citation omitted).

The Court finds that RoundPoint is entitled to summary judgment as to Count V. Viewing the evidence in the light most favorable to Mr. Parks and giving Mr. Parks the benefits of all the

---

11 Notably, Count V states "[t]here exists a duty of good faith and fair dealing implied in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the benefit of the contract." *Complaint* ¶ 41 (Document 1-1). Count V does not cite any portion of the Deed of Trust which RoundPoint violated.

favorable inferences, the evidence is insufficient to establish that RoundPoint breached the contract by not modifying the loan. During Mr. Parks' deposition, he testified that no one at RoundPoint told him they would modify the Loan regardless of his income. (Parks Dep. 29:10-13) (Document 24-2.). Additionally, Mr. Todd's affidavit reveals that RoundPoint has, in fact, processed multiple loan modification applications but determined that Mr. Parks did not have the necessary income to qualify for a loan modification. (Todd Aff. ¶ 13-17 and 23-27) (Document 24-1.). However, Mr. Todd's affidavit also reveals that Mr. Parks submitted another loan modification application on January 10, 2019, which is under review.[12] (*Id*. at ¶ 27.) Finally, nothing in Count V supports a breach of contract claim, because Mr. Parks cannot cite any provision in the mortgage loan granting him *the right* to a modification of his loan. Therefore, Mr. Parks has no contractual right to a modification of the Loan, and RoundPoint's refusal to grant the same does not constitute a breach.

Mr. Parks correctly reminds the Court that there is an implied covenant of good faith and fair dealing in every West Virginia contract. *See Fifth Third Bank v. McClure Properties, Inc.*, 724 F. Supp. 2d 598, 609 (S.D.W. Va. 2010) (Chambers, J.). However, "[t]he implied covenant of good faith and fair dealing extends only to performance of the contract in relation to rights and benefits granted under it." *Spoor v. PHH Mortg. Corp.*, No. 5:10CV42, 2011 WL 883666, at *5 (N.D.W. Va. Mar. 11, 2011). Since there is no right granted in the contract to a loan modification, it must follow that no implied covenant as to loan modification exists. *Id*. (collecting case). Under West Virginia law, RoundPoint does have the right to foreclose without considering alternatives, like a loan modification. *Id*. at 6 (citing *Lucas v. Fairbanks Capital Corp.,* 618

---

12 Mr. Todd's affidavit notes that the January 10, 2019 loan modification application was incomplete, and RoundPoint sent Mr. Parks a notice of deficiency and it is presently awaiting additional documentation so it can fully process the application.

S.E.2d 488, 490 (W. Va. 2005). There is no federal law requiring that RoundPoint modify the Loan. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777-79 (4th Cir. 2013) (holding that a lender was not obligated to modify a borrower's loan). Also, 38 C.F.R. § 36.4315, which is specific to loan modifications, "does not create a right of a borrower to have a loan modified, but simply authorizes the loan holder to modify a loan in certain situations without the prior approval of the Secretary." *Id*. Finally, under West Virginia law, "an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim." *Ballard v. Bank of Am., N.A.*, No. CIV.A. 2:12-2496, 2013 WL 5963068, at *6 (S.D. W. Va. Nov. 7, 2013) (Copenhaver, J.), *aff'd sub nom. Ballard v. Bank of Am., N.A.*, 578 F. App'x 226 (4th Cir. 2014).

Therefore, the Court having previously found no breach of contract as to modification, there can be no claim for breach of the implied covenant of good faith and fair dealing as to the same. RoundPoint's motion for summary judgment as to Count V should be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Plaintiff's Motion for Partial Summary Judgment on Liability for Eleven (11) Violations of the West Virginia Consumer Credit and Protection Act* (Document 20) be **GRANTED.**

The Court further **ORDERS** that *RoundPoint Mortgage Servicing Corporation's Motion for Summary Judgment* (Document 24) be **GRANTED** as to Counts II, III, IV, and V, and **DENIED** as to Count I.

Lastly, Court **ORDERS** that the *Defendant's Consent Motion to Extend Deadline to Respond to Plaintiff's Partial Motion for Summary Judgment* (Document 22), the *Plaintiff's*

*Consent Motion to Extend Deadline to Respond to Defendant's Partial Motion for Summary Judgment* (Document 26), and the *Defendant's Consent Motion to Extend Deadline to File a Reply Brief in Response to Plaintiff's Opposition to Defendant's Motion for Summary Judgment* (Document 31) be **GRANTED.**

    The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

                  ENTER:    April 8, 2019

*signature*

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA